# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CINDY KING,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. CIV-09-868-M |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Cindy King ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her applications seeking disability insurance benefits and supplemental security income payments in June, 2006 [Tr. 111 - 113 and 117 - 119]. She alleged that her COPD[1] and emphysema resulted in breathing difficulties

---

[1]"COPD" is the "[a]bbreviation for chronic obstructive pulmonary disease."
(continued...)

which became disabling as of January, 1, 2005 [Tr. 141]. Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted an October, 2008 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 23 - 62 and 84]. In her December, 2008 decision, the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 9 - 22]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 4], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on

---

[1](...continued)
*Stedman's* Medical Dictionary 439 (28th ed. 2006) (italics omitted) .

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff contends, first, that "[t]he ALJ failed to follow prescribed standards in evaluating and weighing [Plaintiff's treating] physician's opinion and failed to cite specific,

3

legitimate reasons to justify rejection of that opinion."[2] [Doc. No. 19, p. 10]. Second, Plaintiff argues that "[t]he ALJ failed to perform an individualized evaluation of [Plaintiff's] severe obesity in combination with her severe COPD as required by SSR 02-1p." *Id.* at 12.

**Analysis**

    **Treating Physician's Opinion**

The ALJ determined that Plaintiff was severely impaired by COPD, hypertension, diabetes, and obesity [Tr. 11] which resulted in a residual functional capacity ("RFC")[3] to perform sedentary work[4] with certain additional limitations [Tr. 18]. These limitations included the inability to work at significant unprotected heights or around potentially dangerous unguarded moving machinery; the need to work in a climate controlled environment; the need to avoid even moderate exposure to dust, fumes, gases, and odors; the inability to climb ladders, ropes, or scaffolds; the inability to climb stairs and ramps on more

---

[2]Unless otherwise indicated, quotations in this report are reproduced verbatim.

[3]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[4]According to Social Security regulations,

    [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

than an occasional basis; and the inability to balance, kneel, stoop, crawl, or crouch on more than a frequent basis. *Id.*

In formulating the foregoing RFC, the ALJ considered the opinion evidence submitted by Plaintiff's treating physician, Laura Black-Wicks, D.O., on October 1, 2008 [Tr. 290 - 293]. The ALJ stated that the limitations imposed by Dr. Black-Wicks were "essentially the same as those in the above stated residual functional capacity assessment." [Tr. 20]. As to additional limitations established by Dr. Black-Wicks – for example, the need to sometimes take unscheduled breaks "if doing activities like mopping, lifting" [Tr. 292] and the need to be absent about two days a month [Tr. 293][5] – the ALJ found that "these restrictions are unsupported by the physician's own progress notes." [Tr. 20].

In specific support of this finding, the ALJ "note[d] that in a progress report also dated October 1, 2008, a review of symptoms was noted to be 'negative for shortness of breath, abdominal or urinary symptoms.' Upon physical examination her blood pressure was noted to be slightly elevated at 146/87; however, no hypertensive complications were noted." *Id.* Nevertheless, Plaintiff maintains that "the ALJ failed to articulate specific, legitimate reasons to justify complete rejection of Dr. Black-Wicks' medical opinions and she otherwise did not weight those opinions under the factors set forth in the regulations or provide an explanation of what other weight the opinions were given." [Doc. No. 19, p. 12].

---

[5]Because the Commissioner acknowledges in his response brief that the ALJ rejected these particular limitations imposed by Plaintiff's treating physician, this report will not reference other restrictions imposed by Dr. Black-Wicks that were rejected by the ALJ [Doc. No. 21, p. 11].

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, she must consider the weight she does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301. If she rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id*; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

Here, the ALJ accepted Dr. Black-Wicks' assessment that Plaintiff was able to perform work at the sedentary level of exertion but specifically rejected the treating doctor's assessment that Plaintiff's ability to perform such work was further limited by the need to take unscheduled breaks if doing an activity like mopping or lifting and by the need to be absent from work about twice a month [Tr. 20, 292, and 293]. Thus, the question becomes whether the ALJ's stated reason for rejecting these limitations was both specific and legitimate. As Plaintiff argues, the ALJ's rejection of these limitations is crucial in light of the testimony of the vocational expert; the expert stated that Plaintiff would not be able to perform the jobs relied upon by the ALJ in support of her nondisability finding at step five had the limitations assessed by Dr. Black-Wicks been adopted [Tr. 60 - 61].[6]

There is no question that the reason given by the ALJ for rejecting the additional restrictions was specific. She found that Dr. Black-Wicks' own progress notes fail to support

---

[6]The Commissioner does not contest Plaintiff's argument that "if Dr. Black-Wicks' opinions were accepted, it would support a finding of disability." [Doc. No. 19, p. 11].

the restrictions and specifically pointed to the treatment note generated the same day as the doctor's functional assessment [Tr. 20]. Accordingly, the determinative question is whether the ALJ's rationale was legitimate.

The treatment note at issue revealed the following on physical examination: "O2[7] SATS 94%, pulse is 86, blood pressure was up at 146/87. Weight is 258. Please see the form for her disability physical." [Tr. 312]. The note further shows that Dr. Black-Wicks "increased [Plaintiff's] Lisinopril today because her blood pressure is not controlled." *Id.* In rejecting Dr. Black-Wicks' restrictions, the ALJ relied on that portion of the treatment note reflecting Plaintiff's report of her current symptoms [Tr. 20] : "Currently is negative for chest pain, shortness of breath, abdominal or urinary symptoms." [Tr. 312]. She further determined that Plaintiff's blood pressure was "slightly elevated" but that no hypertensive complications had been noted [Tr. 20].

The ALJ's stated reason for rejecting Dr. Black-Wicks' restrictions on the basis of lack of support from this treatment note is not legitimate. Dr. Black-Wicks linked her treatment note with "the form for her disability physical." [Tr. 312]. On that form, the physician indicated that Plaintiff's impairments were "likely to produce 'good days' and 'bad days[.'"] [Tr. 293]. The fact that Plaintiff was examined on a good day does not serve to negate Dr. Black-Wicks' opinion that Plaintiff's impairments and/or treatment would likely

---

[7] "O2" is an abbreviation for oxygen. *See* http://www.medilexicon.com/medicalabbreviations.php

cause her to be absent from work about twice a month, *id.,* and would further necessitate unscheduled breaks during the workday if she were performing activities such as mopping and lifting. [Tr. 292]. Moreover, the ALJ's reliance on what she termed to be Plaintiff's only "slightly elevated" [Tr. 20] blood pressure as reason to reject the treating physicians' work restrictions is not legitimate when the physician specifically found that Plaintiff's "blood pressure is not controlled." [Tr. 312].

Apart from her specific reference to the October 1, 2008, progress note, the ALJ also stated generally that the restrictions are not supported by the "physician's own progress notes." [Tr. 20]. In order to support this non-specific, conclusory determination, the Commission points to three treatment notes in arguing that "Dr. Black-Wicks' finding that Plaintiff was negative for shortness of breath was not as isolated as Plaintiff suggests, but was rather part of a pattern of Dr. Black-Wicks' progress reports." [Doc. No. 21, p. 12]. These treatment notes do not lend legitimacy to the ALJ's conclusory statement in support of her rejection of the treating physician's restrictions. The March 24, 2006, treatment note referenced by the Commissioner as showing Plaintiff's lungs to be clear to auscultation and with no wheezes, rales, or rhonchi [Tr. 201] is immediately preceded by the report of Plaintiff's February 9, 2006, examination where auscultation did reveal slight wheezing bilaterally [Tr. 200];[8] the "fairly good air exchange" reported on May 14, 2007[Tr. 267], and

---

[8]It is further noted that the findings in the March 24, 2006, treatment note offered by the Commissioner as part of a pattern of Dr. Black-Wicks' progress reports were actually the findings of Ian Thompson, M.D. [Tr. 201].

9

May 16, 2008 [Tr. 262] is clearly not synonymous with "negative for shortness of breath." [Doc. No. 21, p. 12].

Moreover, the Commissioner's explanations[9] are not those of the ALJ but are, instead, post hoc rationalizations proffered by the Commissioner to fill the holes in the ALJ's decision. Such post hoc rationalizations are not favored in this circuit. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004); *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

Because proper consideration of the work restrictions imposed by Plaintiff's treating physician did not inform the ALJ's assessment of Plaintiff's RFC, remand is required.[10]

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

The parties are advised of their right to object to this Report and Recommendation by June 14, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[9]The Commissioner also argues that "Dr. Black-Wicks noted that the main issue with Plaintiff's chronic obstructive pulmonary disease was her continued smoking. . . . In fact, the only two progress reports that noted Plaintiff's shortness of breath coincided with Plaintiff's admission that she had resumed smoking[.]" [Doc. No. 21, p. 12].

[10]Because remand has been recommended based on Plaintiff's first claim of error, Plaintiff's second claim has not been addressed because it "may be affected by the ALJ's treatment of this case on remand." *Watkins,* 350 F.3d at 1299.

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 25th day of May, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE